```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| JOHN CARTER, | : |
| | : |
|     Plaintiff | : |
| | :   CIVIL NO. 1:CV-05-1995 |
|     vs. | : |
| | :   (Judge Caldwell) |
| LT. K.C. KLAUS, *et al.*, | : |
| | : |
|     Defendants | : |

*M E M O R A N D U M*

I. *Introduction*

Plaintiff, John Carter, an inmate at the Camp Hill State Correctional Institution (SCI-Camp Hill), Camp Hill, Pennsylvania, filed this civil-rights action pursuant to 42 U.S.C. § 1983, alleging that he was assaulted by staff on June 3, 2005, while housed in the prison's Special Management Unit (SMU).  Carter also claims he was denied medical care, running water, adequate clothing, and housing for seven days after the assault. (Doc. 1, Compl.).  Named as defendants are the following SCI-Camp Hill employees, Lt. Klaus, and correctional officers, Huber, Kotula, Snyder, Britton, Houser, Lee and Pelter.

Presently before the Court is defendants' Second Motion for Summary Judgment.  The motion argues Carter has failed to show that he was subjected to cruel and unusual punishment during his

cell transfer and that he has failed to show that his conditions of confinement after the transfer violated his constitutional rights. Carter alleges that he complied with all orders given him in anticipation of his transfer from one SMU cell to another and that after he was handcuffed, multiple corrections officers assaulted him without provocation.  Contrary to defendants' assertions, Carter argues the video tape of the incident is incomplete, does not demonstrate his medical condition after the assault, or shed any light on the spartan conditions of confinement he was forced to endure for seven days after the assault.

In evaluating the motion under the well-established standard, *see E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 191 (3d Cir. 2008), we must deny it, as there are genuine issues of material fact concerning whether excessive force was used to remove Carter from his cell on June 3, 2005, and whether Carter's weeklong conditions of confinement where he was denied medical care, adequate food, water, and clothing violated his Eighth Amendment rights.

*II.    Background*

The summary judgment record is as follows.  On June 3, 2005, John Carter, a state inmate, was housed at SCI-Camp Hill in the Special Management Unit (SMU).  (Doc. 72, Defendants' Statement of Material Facts (DSMF) at ¶ 1; Doc. 109, Plaintiff's Counter

Statement of Material Facts (PSMF) at ¶ 1; Doc. 76, Defendants' Ex. B, Video Tape of June 3, 2005 SMU incident).  On June 3, 2005, water covered the floor of Carter's cell and the area in front of his cell.  (*Id.*)  Some of Carter's personal property, including his shoes and a few books, were neatly located on a shelf in the rear of his cell.  (*Id.*)  Carter was advised he would be moving from one SMU cell to another.  (Doc. 1, Compl. at ¶ 5).  Prior to his SMU cell door being opened, Carter was handcuffed behind his back.  (*Id.*)  At some point, Carter's cell door was opened.  (*Id.*) An incident occurred between corrections officers and Carter in Carter's cell before he exited the cell.  (Ex. B, Videotape). Several officer entered Carter's cell.  (*Id.*) While handcuffed behind his back, Carter was placed faced down on the floor of his cell with several corrections officers surrounding him and/or on top of him.  (*Id.*)  Carter was physically restrained when he was carried by several officers out of his original cell and to a nearby cell on the same tier.  (*Id.*)  Carter was initially placed on the cell floor by the officers.  (*Id.*) Moments later Carter was placed face down on the bunk in the new cell.  (*Id.*)  While several officers maintained their hold on Carter, another officer(s) removed Carter's clothing.  (*Id.*)

      The entire incident was not caught on videotape.  (*Id.*) The corrections officers were already in Carter's cell when the videotape recording starts.  (*Id.*)  During the incident the battery

in the video camera died. (*Id.*) The corrections officers exited Carter's new cell, and the cell door closed, prior to the videotaping starting again. (*Id.*)  Carter is not clearly visible on the videotape after the door of his new cell was closed. (*Id.*)

A Medical Incident/Injury Report, dated June 3, 2005, completed by a Registered Nurse (non-defendant) indicates that at approximately 1230 Carter was non-responsive to the nurse's inquiries and was observed lying on the floor of his cell covered with a blanket. (DSMF at ¶ 6; Doc. 71-2, Medical Incident/Injury Report; PSMF at ¶ 6).

According to Carter, while he was restrained, the named defendants physically assaulted him. (Doc. 1, Compl. at ¶ 5). Carter argues that he was not covered with a blanket while in the new SMU cell. (PSMF at ¶ 7). Carter claims he voluntarily submitted to being handcuffed in order to accomplish his voluntary change in cell assignment. (Doc. 110, Carter Decl. at ¶ 3). Carter claims he was assaulted without provocation by the defendants. (*Id.*) Plaintiff states he was not examined by medical staff following the incident. (Carter Dec. at ¶ 5). Likewise, Carter avers he did not refuse to be examined by medical personnel that day. (*Id.* at ¶ 6). Plaintiff claims he was left "naked in cell D2-18 [his new cell] without a mattress, personal property, hygiene items, and no running water," and was regularly deprived of meals during the 6 a.m. to 2 p.m. shift for the next seven days. (*Id.* at ¶ 8).

Carter claims to have suffered physical and emotional injuries as a result of the June 3, 2005, assault. (*Id*. at ¶ 9).

*III.   Discussion*

   *A. Excessive Use of Force Claim*.

Carter argues defendants' use of intentional force violated the Eighth Amendment. In order for a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). "In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986)). The absence of any injury, or evidence of only de minimis injuries, is "relevant

to the Eighth Amendment inquiry, but does not end it." *Hudson*, 503 U.S. at 7; 112 S.Ct. at 999. To survive a motion for summary judgment on an excessive-force claim, a plaintiff must set forth specific facts showing that force was applied "maliciously and sadistically to cause harm," as opposed to "a good faith effort to maintain or restore discipline." (*Id.*)

In this case, the summary judgment record shows that there are genuine issues of material fact whether the physical contact between the defendants and Carter was undertaken in a deliberate attempt to restore discipline or to intentionally inflict pain. The videotape is incomplete and does not capture the event from start to finish. While the tape clearly demonstrates a deliberate use of force by officers against Carter, the extent of force used cannot be determined on the record before the Court. At the summary judgment stage, we have to view the record in the light most favorable to Carter and draw all inferences in his favor. Consequently, Defendants' motion for summary judgment as to Carter's use of force claim will be denied.

*B. Conditions of Confinement Claims.*

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. Prison officials must provide humane conditions of confinement; ensure that inmates receive adequate food, clothing, shelter, and medical care; and take reasonable measures to guarantee the safety of the inmates. *Farmer*

*v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994).  Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10, 112 S.Ct. 995, 999-1000, 117 L.Ed.2d 156 (1992). Such a violation occurs when a prison official is deliberately indifferent to an inmate's health or safety.  *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977. "No static test determines whether conditions of confinement are cruel and unusual.  These terms must 'draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society.'"  *Tillery v. Owens*, 719 F. Supp. 1256, 1262 (W.D. Pa. 1989)(citing *Rhodes,* 452 U.S. at 346-47, 101 S.Ct. at 2399).  Conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. *Rhodes*, 452 U.S. at 347, 101 S.Ct. at 2399.

To establish an Eighth Amendment claim, Carter must show that defendants were aware that the denial of medical treatment after the assault and that the alleged austere conditions of confinement in his new SMU cell posed "a substantial risk of serious harm" to his health or safety.  *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977.  In reviewing this type of claim, the courts have stressed the duration of the complainant's exposure to the

alleged unconstitutional conditions and the "totality of the circumstances" as critical to a finding of cruel and inhumane treatment. *See Wilson v. Seiter*, 501 U.S. 294, 304-05, 111 S.Ct. 2321, 2327-28, 115 L.Ed.2d 271 (1991).

     Based on the record before the Court, Carter alleges the deprivation of medical care, food, clothing and access to running water for a period of seven days. (Doc. 1, Compl.). The videotape does not assist in the resolution of any of these claims. The submission of the nurse's medical report, without more, also does not resolve the issue as Carter disputes its authenticity, claiming he was denied access to medical care following the assault. The Court finds that there are genuine issues of material fact as to the defendants' knowledge and their response to Carter's allegedly unconstitutional conditions of confinement for the week following the alleged assault. Summary judgment would thus be inappropriate on these Eighth Amendment claims.

     We will issue an appropriate order.

/s/William W. Caldwell<br>
William W. Caldwell<br>
United States District Judge

Date: April 3, 2009

-8-

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN CARTER, | : |
| | : |
|     Plaintiff | : |
| | :   CIVIL NO. 1:CV-05-1995 |
| vs. | : |
| | :   (Judge Caldwell) |
| LT. K.C. KLAUS, *et al.*, | : |
| | : |
|     Defendants | : |

*O R D E R*

AND NOW, this 3rd day of April, 2009, for the reasons set forth in the accompanying Memorandum, it is hereby ordered that:

1. Defendants' Motion for Summary Judgment (Doc. 70) is denied.

2. A trial date in this matter will be set by further order of Court.

                                        /s/William W. Caldwell
                                        William W. Caldwell
                                        United States District Judge